<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RAYMOND D. KATES,                          :
                                           :    Civil Action No. 10-6386 (RMB)
                     Plaintiff,            :
                                           :
              v.                           :    **OPINION**
                                           :
BRIDGETON POLICE DEPARTMENT,               :
et al.,                                    :
                                           :
                     Defendants.           :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Raymond D. Kates
South Woods State Prison
Bridgeton, NJ 08302

**BUMB**, District Judge

     Plaintiff Raymond D. Kates, a prisoner confined at South
Woods State Prison in Bridgeton, New Jersey, seeks to bring this
action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging
violations of his constitutional rights.  Based on his affidavit
of indigence and the absence of three qualifying dismissals
within 28 U.S.C. §1915(g), the Court will grant Plaintiff's
application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. §
1915(a) and order the Clerk of the Court to file the Complaint.

     At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or
malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who
is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's
Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that, on May 2, 2007, members of the
Bridgeton Police Department assaulted him, including using a
canine unit to attack him without cause.  He alleges that an
officer of the Bridgeton Police Department lied during his trial.

Plaintiff alleges that the Cumberland County Prosecutor's
Officer conspired with the Bridgeton Police Department and the
Cumberland County Sheriff's Department to obstruct justice in his
case.

Finally, Plaintiff alleges that on September 2, 2010, he was
attacked by a Sheriff's Department Officer and was taken to
Bridgeton Hospital emergency room with a severe beating to his
body, head, and face.

Plaintiff's Complaint is dated November 4, 2010.  He names
as Defendants the Bridgeton Police Department, the Cumberland
County Sheriff's Department, the Cumberland County Prosecutor's
Office, and John Does.[1]

---

[1] No factual allegations are made with respect to the
fictitious defendants.  While fictitious defendants "'are
routinely used as stand-ins for real parties until discovery
permits the intended defendants to be installed,'" Hindes v.
FDIC, 137 F.3d 148, 155 (3d Cir. 1998) (citations omitted),

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

---

Plaintiff's failure here to allege any identifying characteristics or any facts suggesting a basis for liability requires dismissal of all claims against unnamed fictitious defendants for failure to state a claim.  It is not sufficient merely to add "John Does" to the list of defendants in the caption of the Complaint; Plaintiff must, in the body of the Complaint, make factual allegations describing the John Doe defendants and their actions.

3

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and

"that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).[2]

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some

---

[2] Based upon this standard, Plaintiff's bare allegations of "conspiracy" are not sufficient to state a claim for liability based upon conspiracy.

complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests." Indeed, taking <u>Twombly</u> and the
Court's contemporaneous opinion in <u>Erickson v. Pardus</u>,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8. Put another way, in light of <u>Twombly</u>, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief. We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of <u>any</u> civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." <u>Id.</u> at 1950. Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u>

Therefore, after <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. <u>See Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances. ... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Rule 18(a) controls the joinder of claims. In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>     (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; <u>and</u>
>     (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252

Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th

Cir. 2007).

In actions involving multiple claims and multiple

defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

<u>Federal Practice and Procedure</u>, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be

liberally construed in the interest of convenience and judicial

economy.  <u>Swan v. Ray</u>, 293 F.3d 1252, 1253 (11th Cir. 2002).

However, the policy of liberal application of Rule 20 is not a

license to join unrelated claims and defendants in one lawsuit.

<u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir.

8

2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007); <u>Coughlin v.</u>
<u>Rogers</u>, 130 F.3d 1348 (9th Cir. 1997).[3]

Pursuant to Rule 21, misjoinder of parties is not a ground
for dismissing an action.  Instead, a court faced with a
complaint improperly joining parties "may at any time, on just
terms, add or drop a party.  The court may also sever any claims
against a party."

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34
(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>
<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>
<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

---

[3] Plaintiff has failed to satisfy the requirements for
joinder, asserting as he does unrelated claims for assault by
Bridgeton Police Officers, apparently at the time of his arrest,
with claims of a beating by officers of the Cumberland County
Sheriff's Department more than three years later.  Because of
this Court's resolution of the claims, however, it is not
necessary to address the joinder issue more fully.  Plaintiff
should note, nevertheless, that any proposed amended complaint
that he must file must satisfy the joinder requirements.

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.   ANALYSIS

A.   Vicarious Liability

     Plaintiff asserts claims against the Bridgeton Police
Department, the Cumberland County Sheriff's Department, and the
Cumberland County Prosecutor's Office based upon the actions of
individuals and an untenable theory of vicarious liability.

     Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.   See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).   "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."   Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).   Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so

12

obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff has failed to allege any facts that would
suggest a basis for imposing liability upon any of the
governmental entities named as defendants.  He has failed to
allege any facts that would suggest that any constitutional
violations he suffered were the result of an official policy or
custom.  Accordingly, all claims against the named governmental
entities will be dismissed.

B.   Claims Against the Cumberland County Prosecutor's Office

Plaintiff alleges that the Cumberland County Prosecutor's
Office conspired with the Bridgeton Police Department and the
Cumberland County Sheriff's Office to obstruct justice in his
case.  This Court has already noted that this allegation of
conspiracy is fatally vague.  In addition, the conclusory
allegation of obstruction of justice in connection with
Plaintiff's "case" suggests that the Cumberland County
Prosecutor's Office is immune.

To the extend Plaintiff intends to assert a claim for
malicious prosecution, the Complaint fails to state a claim.  In
order to state a prima facie case for a § 1983 claim of malicious
prosecution pursuant to the Fourth Amendment, a plaintiff must
establish the elements of the common law tort as it has developed

13

over time, Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996),
and that there has been a seizure, Gallo v. City of Philadelphia,
161 F.3d 217, 222 (3d Cir. 1998); Luthe v. Cape May, 49 F.
Supp.2d 380, 393 (D.N.J. 1999).  Under New Jersey law, the common
law tort elements of a malicious prosecution action arising out
of a criminal prosecution are:  (1) the criminal action was
instituted by the defendant against the plaintiff, (2) it was
actuated by malice, (3) there was an absence of probable cause
for the proceeding, and (4) the criminal proceeding was
terminated favorably to the plaintiff.  Lind v. Schmid, 67 N.J.
255, 262 (1975).  A plaintiff attempting to state a malicious
prosecution claim must also allege that there was "'some
deprivation of liberty consistent with the concept of seizure.'"
Gallo, 161 F.3d at 222 (quoting Singer v. Fulton County Sheriff,
63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510
U.S. 266 (1994).

    Here, Plaintiff has alleged no facts tending to establish
that the prosecution was instituted by malice, that there was an
absence of probable cause for the prosecution, or that the
criminal proceeding ended in his favor.  To the contrary, as
Plaintiff is now confined at South Woods State Prison, it would
appear that he was convicted on at least one or more of the
charges against him.

In addition, the prosecutors are likely immune from any claim of malicious prosecution.  "[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity.  Burns v. Reed, 500 U.S. 478, 492 (1991).  Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  Here, it appears that Plaintiff's claims against the Prosecutor's Office arise out of the quintessential prosecutorial functions; thus, the prosecutorial defendants are entitled to absolute immunity.

Finally, in addition to being entitled to absolute prosecutorial immunity, the Cumberland County Prosecutor's Office is immune from suit in this Court under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

15

prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

To determine whether Eleventh Amendment immunity applies to a state agency, a court must consider three factors:  (1) the source of the agency's funding - i.e., whether payment of any judgment would come from the state's treasury, (2) the status of the agency under state law: and (3) the degree of autonomy from state regulation.  See Flitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir.) (en banc), cert. denied, 493 U.S. 850 (1989).

In Coleman v. Kaye, 87 F.3d 1491 (3d Cir. 1996), the U.S. Court of Appeals for the Third Circuit considered all of these factors in the context of a New Jersey county prosecutor's office

16

and recognized that county prosecutorial offices conduct two distinct sets of functions: (1) the administrative functions of operating their offices and (2) the classic law enforcement and investigative functions for which they are chiefly responsible. The Third Circuit's analysis culminated in the conclusion that "when [New Jersey county] prosecutors engage in classic law enforcement and investigative functions, they act as officers of the state." Id. at 1505.

Here, the claims against the Cumberland County Prosecutor's Office appear to arise out of classic law enforcement functions, and are barred from suit in federal court under the Eleventh Amendment.

C.   Claims Based upon False Testimony

Plaintiff alleges that police officers lied during his trial.

Witnesses, including police witnesses, are absolutely immune from civil damages based upon their testimony. See Briscoe v. LaHue, 460 U.S. 325, 341-46 (1983). That immunity extends to investigators testifying in a grand jury proceeding. Kulwicki v. Dawson, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992). Accordingly, this claim must be dismissed with prejudice.

D.   Claims Arising Out of Incident on May 2, 2007

Plaintiff alleges that officers of the Bridgeton Police Department beat him on May 2, 2007. The Complaint is dated

17

approximately three and one-half years later, on November 4, 2010.[4]

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"). See also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315

---

[4] Typically, a prisoner's complaint is deemed filed at the moment he delivers it to prison officials for mailing to the district court. See Burns v. Morton, 134 F.3d 109 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)). For purposes of this decision, this Court will assume that Plaintiff delivered it for mailing on the date signed, that is, on November 4, 2010.

(3d Cir. 2007) ("district court may <u>sua</u> <u>sponte</u> dismiss a claim as
time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent
from the complaint that the applicable limitations period has
run") (citing <u>Jones v. Bock</u>, <u>Pino v. Ryan</u>) (not precedential);
<u>Hall v. Geary County Bd. of County Comm'rs</u>, 2001 WL 694082 (10th
Cir. June 12, 2001) (unpub.) (applying <u>Pino</u> to current
§ 1915(e); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir.
1998)(unpub.); <u>Johnstone v. United States</u>, 980 F.Supp. 148 (E.D.
Pa. 1997) (applying <u>Pino</u> to current § 1915(e)).  The requirements
of 28 U.S.C. § 1915A (governing civil actions in which a prisoner
seeks redress from a governmental entity or officer or employee
of a governmental entity) and 42 U.S.C. § 1997e (governing
actions brought with respect to prison conditions) that federal
courts review and dismiss any complaint that fails to state a
claim parallels the provision in 28 U.S.C. § 1915(e).

"[T]he accrual date of a § 1983 cause of action is a
question of federal law that is <u>not</u> resolved by reference to
state law." <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1095 (2007)
(emphasis in original).

A claim accrues as soon as the injured party "knew or had
reason to know of the injury that constitutes the basis of his
action." <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3d Cir. 1982).
<u>See also</u> <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d
1380, 1385 (3d Cir. 1994).  "Plaintiff'S actual knowledge is

19

irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." <u>Fassnacht v. United States</u>, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing <u>Oshiver</u>, 38 F.3d at 1386).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  <u>See</u> <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); <u>Cito v. Bridgewater Township Police Dept.</u>, 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. <u>Cito</u>, 892 F.2d at 25; <u>accord</u> <u>Brown v. Foley</u>, 810 F.2d 55, 56 (3d Cir. 1987).

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application.  <u>Wilson v. Garcia</u>, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable).  New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

21

Id. n.9.

Here, according to the allegations of his Complaint, Plaintiff's claims arising out of the alleged beating on May 2, 2007, accrued[5] on that same date.  Plaintiff alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law.  Thus, Plaintiff's claims arising out of the alleged beating on May 2, 2007, are time-barred and will be dismissed with prejudice.

V.   CONCLUSION

For the reasons set forth above, all claims will be dismissed.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome certain deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open and to seek leave to file an amended complaint.[6]

_____

[5] A claim accrues as soon as the injured party "either is aware, or should be aware, of the existence of and source of an injury." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994).  "Plaintiff's actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes

An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: December 21, 2011

---

omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.